UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD THOMPSON,

        Plaintiff,

v.

        File No.  1:08-cv-409

CITY OF LANSING and THE CITY OF
LANSING POLICE DEPARTMENT, and
EDWARD FORREST, Mayor VIRG
VERNERO, individually, jointly and
severally,

        HON. ROBERT HOLMES BELL

        Defendants.
_____/

## O P I N I O N

Plaintiff Richard Thompson sued Defendants City of Lansing, The City of Lansing Police Department, Captain Edward Forrest, and Mayor Virg Bernero[1] alleging one count of reverse discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq*. ("Title VII"), and the Elliot-Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101 *et seq*. ("ELCRA").  Defendants filed a motion for summary judgment in July 2008.  (Dkt. No. 16.)  Plaintiff responded and also sought leave to amend the complaint, attaching a proposed amended complaint to add a claim of violation of equal protection pursuant to 42 U.S.C. § 1983, and a claim of discrimination pursuant to 42 U.S.C. § 1981.

---

[1]The Court follows the spelling of Defendant Bernero's name as set forth in Defendants' pleadings rather than as set forth in Plaintiff's complaint.

(Dkt. No. 18.) Defendants filed a response to the motion to amend. (Dkt. No. 20.) At the close of discovery, Defendants filed a renewed motion for summary judgment based on new information. (Dkt. No. 30.) Plaintiff has filed a response to the renewed motion. (Dkt. No. 33.) The Court heard oral argument from the parties on February 20, 2009. At oral argument, the Court requested additional evidence and briefing from Defendants; Defendants filed supplemental briefs and evidence on February 24 and 25, 2009. (Dkt. Nos. 36, 37.) Plaintiff filed a response to the supplemental filings on March 10, 2009. (Dkt. No. 40.)

## I.

The Court has subject matter jurisdiction over Plaintiff's Title VII and state law claims pursuant to 28 U.S.C. §§ 1331 and 1367.

## II.

On March 16, 2007, Plaintiff Richard Thompson, a white male, submitted an application for employment with the City of Lansing for a position as a police officer. Plaintiff was interviewed for the position of Police Officer I on March 23, 2007. In April 2007, Plaintiff received a letter dated April 16, 2007, from HR Specialist Heather McGinnis indicating that he had been selected for the current police officer roster. The letter states, in relevant part:

> Dear Mr. Thompson:
>
> On behalf of the Lansing Police Department, I would like to congratulate you on your successful completion of the Police Officer Oral Board Interview. It has been determined that the score you achieved in your interview allows you to be placed on the current Police Officer Roster.

> . . . If you are selected to fill a vacancy with the Lansing Police Department while this roster is in effect, I will be in contact with you regarding the next phase of the process.

(Dkt. No. 1, Ex. A.)

McGinnis prepared a roster of candidates for the 2006-2007 hiring process "on or about" April 27, 2007. (Defs. Ex. F, McGinnis Aff. ¶ 5.) As the hiring process continued "the next to last column was filled in to show the final results of the process." (*Id.*) The roster lists candidates in order according to their score following the oral interview process. (Pl. Ex. 5, 2006-2007 Hiring Roster.) The roster also indicates the hiring decision for each candidate. (*Id.*) Next to the names of candidates Randall Hon and Dontae Hairston is typed the word "Hired." Other candidates, including Plaintiff, have handwritten notes next to their name, such as "hired" or "denied." (*Id.*) Lieutenant Craig Baylis testified that candidates that "passed" under the 2006 process were carried over to the 2007 process and were listed on a merged "2006/2007" hiring roster. (Pl. Ex. 7, Baylis Dep. 43.) Baylis also testified that all of the names with typed entries for the hiring decision came from the 2006 hiring process, and that he entered this data after the hiring decision had been made and before the merged 2006/2007 roster was prepared. (Baylis Dep. 44-47.) The roster indicates that as part of the 2006/2007 hiring process, twelve of the fourteen officers that were hired were white, and eleven of the fourteen were white males, including eight white candidates that scored below Plaintiff. (Pl. Ex. 5, 2006/2007 Hiring Roster; McGinnis Aff. ¶ 5.) The lowest scoring candidate hired was a white male. (*Id.*) The two minority candidates listed on the roster,

3

Randall Hon and Dontae Hairston, scored below Plaintiff. (*Id.*)

On June 25 2007, Plaintiff signed a "Conditional Offer of Probationary Employment" noting that Plaintiff's employment would be subject to Plaintiff successfully passing certain prerequisites, including a background investigation, psychological tests, approval by the hiring committee, a physical exam, and an interview with or approval by the chief of police.[2] (Pl. Ex. 8, Conditional Offer of Probationary Employment.)

Detective Steve McClean conducted a background investigation of Plaintiff and submitted his report, dated May 31, 2007, to Defendants. (Pl. Ex. 16, Background Investigation Report of Richard Allen Thompson.) According to the report, Plaintiff indicated that at a previous job with the Kalkaska Sheriff's Department, a female trainee filed a complaint that he "was intimidating her," but he was cleared of any wrongdoing and no discipline resulted. (*Id.* at 10.) The report also notes that:

> Near the end of my completion of this report, I was advised by Sgt. Del Kostanko that . . . he was approached by two Sergeants from the Kalkaska Sheriffs Department that advised him that . . . if Thompson were hired he would immediately create problems for our agency. . . .
>
> I further inquired through Sgt. Kostanko as to more specific information provided by the sergeants. He advised me that they said specifically that he "hated women", and that Thompson was a "job jumper" who would always be looking for a reason to sue the department.

---

[2] The Court is somewhat troubled by what it perceives as Plaintiff's perception that Defendants' conditional offer of employment constituted a firm offer or expectation of employment. The document signed by Plaintiff could not be more clear that any offer of employment was "conditional" upon meeting certain prerequisites and could be "withdrawn at any time in the sole discretion of the City of Lansing." (Pl. Ex. 8.)

(*Id.* at 16.)  Detective McClean spoke with the female officer that filed a complaint against Plaintiff at the Kalkaska Sheriff's Department.  McClean reported that this officer

> . . . was not of the opinion Thompson had "woman issues", but he was at that time what she best described as "pretty egotistical" . . . .  She felt that her issues with him should not preclude him from working with this agency both because of the time that has elapsed since then during which time he has probably matured and because his "attitudes" had not prevented him from doing a good job.

(*Id.* at 17.)  Ultimately, the McClean's report concludes:

> As far as the issue related to some of his "coworkers" that he had issues with in Kalkaska, I came away with the idea that he was just tied up in a quagmire of small town, petty gossip and jealousies, which were pretty much confirmed in the information provided by Under Sheriff Gaultiere.  Regarding the allegations made by [the female officer at the Kalkaska Sheriff's Department], I have no reason to believe they are not true, but I don't feel they are anything out of the ordinary for something one might expect to hear from the "rookie male cop" as he goes through the first couple years thinking he is pretty special.
>
> . . . I see him being able to relate with those we are many times asked to relate with in a respectable, even sympathetic way when necessary.  I also have no reason to think that he'll have any problems standing up to those that will unquestionably challenge him personally.

(*Id.* at 19-20.)

Defendant Forrest testified at his deposition that he reviewed the background investigation by Detective McClean and decided not to recommend the hiring of Plaintiff:

> Q.   Why did you decide to pass on the candidacy of Mr. Richard Thompson?
>
> A.   Because of the indicators and factors that I previously explained.  It appeared that there was an issue that he had with women.  Also that there were individuals that came forward from his organization that provided information that I believe that there were some other underlying issues there.

(Pl. Ex. 13A, Forrest Dep. 77.)  Defendant Forrest also testified that he consulted with both

Chief of Police Mark Alley, a white male, and HR Specialist Susan Graham, and they each agreed with the decision not to hire Plaintiff based on the information in the background report. (*Id.* at 72-73.) Chief Alley testified that he also reviewed the background report and that he is ultimately responsible for the hiring decisions. (Pl. Ex. 14, Alley Dep. 18, 27.)

On July 12, 2007, Plaintiff received a letter from Defendant Forrest dated July 3, 2007, denying him an offer of employment. (Pl. Ex. 9, 07/03/2007 Forrest Letter; Thompson Aff ¶ 9.) Plaintiff subsequently contacted Detective McClean, who allegedly told Plaintiff that, despite the fact that Plaintiff had been approved, Plaintiff was "'bumped' in favor of minorities that Defendant Forrest had moved from the bottom of the list and that room had to be made for the minorities." (Thompson Aff. ¶ 10.) McClean denies making this statement to Plaintiff. (McClean Dep. 20.) Plaintiff also alleges that McClean formed a plan with Lieutenant Baylis to meet with Defendant Forrest and Chief of Police Mark Alley to convince them to have both minorities hired as well as Plaintiff. (Thompson Aff. ¶ 11.) McClean testified that he did meet with Defendant Forrest and Lieutenant Baylis to discuss the decision to deny employment to Plaintiff, but he denies having conceived a plan to have Plaintiff hired together with minorities. (McClean Dep. 20.) McClean also testified that he was not part of the decision-making process and had not seen the hiring list prior to speaking with Plaintiff. (*Id.* at 20, 42.)

Plaintiff testified that he did not suffer any wage losses as a result of not being hired, because he was being paid a higher salary in his then-current position than he would have

made as a Lansing Police Officer. (Pl. Ex. 3, Thompson Dep. 26.) Plaintiff also testified that he has not experienced any medical or psychological issues as a result of not being hired. (*Id.* at 73.)

### III.

#### A. Stipulated Dismissal

Defendants assert that the City of Lansing Police Department is not a separate entity that can be sued. Plaintiff agrees. All claims against the City of Lansing Police Department will be dismissed.

Defendants assert that individual Defendants Forrest and Bernero do not have "employer" liability under Title VII. Plaintiff agrees. The Title VII (but not the Michigan state law claim) against Defendants Forrest and Bernero will be dismissed.

Plaintiff also stipulates to dismissal of claims against Defendant Bernero in his official and individual capacity.

Thus, after dismissal of claims, what remains from Plaintiff's original complaint is the Title VII claim against the City of Lansing, and the ELCRA state law claim against Defendants Forrest and the City of Lansing. Also remaining are the equal protection claim under § 1983 and the discrimination claim under § 1981 from Plaintiff's proposed amended complaint.

#### B. Summary Judgment

Defendants seek summary judgment on Plaintiff's claims of discrimination under Title

VII and the ELCRA. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment, the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim, then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). The Court must view the facts in the light most favorable to the nonmoving party only when there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1775 (2007). The mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.* at 252; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

1. Direct Evidence

A plaintiff may show unlawful discrimination by direct evidence, which is evidence that, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999)).

As direct evidence, Plaintiff submits that Detective McClean told him that Defendants "bumped" Plaintiff from the hiring process "in favor of minorities that Defendant Forrest had moved from the bottom of the list and that room had to be made for the minorities." (Thompson Aff. ¶ 10.) McClean denies making this statement, contending that he had not seen the hiring list and did not have a basis for making the statement.[3] (McClean Dep. 20.) At first blush, the testimony by Plaintiff about what McClean said is inadmissible hearsay. *See* Fed. R. Evid. 801, 802. However, before addressing this evidentiary issue, the Court must assess McClean's involvement in the decision-making process.

The Sixth Circuit has held that "comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003). McClean testified that he did not have a role in the hiring process other than to conduct and

---

[3]Plaintiff contends that McClean's denial is disingenuous, referring to McClean's testimony that "If that information [in Plaintiff's affidavit] were believed and could be substantiated, yeah, initially, I thought, holy cow, you know, if somebody reads this that I'm going to work with, it's certainly going to affect my career." (McClean Dep. 37.)

submit the results of the background investigation. (McClean Dep. 42.) The parties do not dispute that Defendant Forrest made the initial hiring decision after review of the background investigation report, and that Chief Alley consulted with Forrest and HR Specialist Susan Graham to make the final decision.[4] Though McClean offered information and a recommendation that would be evaluated by Defendant Forrest and Chief Alley, Plaintiff offers no evidence that McClean was a decision-maker in the hiring process or had any authority to overrule a decision made by Defendant Forrest or Chief Alley. Plaintiff concedes that McClean was not the final decision-maker. (Dkt. No. 33, Pl.'s Resp. in Opp. to Summ. J. 15.) Thus, even if McClean's alleged statements are admitted and believed by a jury, they do not constitute direct evidence of discrimination. *See Carter*, 349 F.3d at 273 (concluding that because the declarant was not a decision-maker, his statements are not direct evidence of discrimination).

Even if it were direct evidence, it is not admissible because it lacks foundation and it is hearsay. *See Jacklyn*, 176 F.3d at 927 (holding that the court may not consider hearsay evidence on a motion for summary judgment). Plaintiff contends that it is not hearsay because it is an admission by Defendants' "employee . . . concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . ." Fed. R. Evid. 801(d)(2). There is no dispute that McClean is an employee of the police department for the City of Lansing. (McClean Dep.10.) However, Defendants argue that

---

[4]Though not relevant for this issue, the parties disagree as to whether Chief Alley made an independent decision or merely "rubber-stamped" the decision of Defendant Forrest.

McClean had no foundation for such a statement because McClean was not involved in the decision-making process. "[A] statement of an agent or employee may be admissible against the principal . . . if within the scope of his agency or employment, but a proper foundation must be made for such a statement to show it was within the scope of his agency or employment." *Mitroff v. Xomox Corp.*, 797 F.2d 271, 276 (6th Cir. 1986). "[T]he party arguing for admission bears the burden of establishing the proper foundation for the admissibility of the statements." *Liadis v. Sears, Roebuck & Co.*, 47 F. App'x 295, 303 (6th Cir. 2002) (citing *Mitroff*, 797 F.2d at 275). Plaintiff contends that the statement was made after investigation by McClean, but Plaintiff offers no evidence as to what McClean investigated, what information he might have gleaned, or what would have given him a basis for commenting on the reasons for Defendants' decision not to hire Plaintiff.

Furthermore, "[s]tatements by employees are outside the scope of an employee's employment, and therefore not subject to the party-admission rule, when they concern decision-making processes into which the employee has no input, or decisions to which they were not a party." *Id.* (emphasis added)  This issue is not resolved solely by determining whether the declarant is a direct decision-maker with respect to the adverse employment action, but involves other factors, such as whether the statements "'were made by managerial-level employees who have the ability to influence a personnel decision'" or whether the declarant has oversight over the composition of the workforce. *Carter*, 349 F.3d at 275 (quoting *Johnson v. Kroger*, 319 F.3d 858, 868 (6th Cir. 2003)). There is no evidence

11

that McClean was a party to the decision not to hire Plaintiff, that McClean had oversight over the hiring decision, or that McClean was a "managerial employee" with the ability to influence the hiring decision. Thus, the Court concludes that McClean's alleged statements lack foundation, and are not party admissions under Rule 801(d)(2)(D).

Finally, McClean's alleged statements are blatantly contradicted by the undisputed results of the 2006/2007 hiring process. *Scott*, 127 S. Ct. at 1775. ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). McClean's statement, as reported by Plaintiff, is that Defendants did not hire Plaintiff in order to make room for minorities at the bottom of the roster. Plaintiff also contends that Detective McClean formed a plan to meet with Captain Forrest to discuss how Defendants could "have both the minorities as well as [Plaintiff] hired . . . ." (Thompson Aff. ¶¶ 10-11.) The hiring roster indicates that eight white candidates with scores lower than Plaintiff's were hired. The two minority candidates appearing on the 2006/2007 roster scored in the top half of the group of hires. In other words, out of the fourteen total hires, the seven lowest scoring hires were white. Thus, Plaintiff cannot point to any minority candidate at the low end of the roster that Defendants favored at Plaintiff's expense.

Even assuming that Defendants intended to ensure that at least one or two minority candidates would be hired from the roster, there would have been no need "bump" Plaintiff

from the process to do so. There were fourteen candidates hired as part of the 2006/2007 process, but the lowest scoring minority candidate that was hired had the twelfth highest score on the roster. (Pl. Ex. 5.) Thus, even if all of the high-scoring non-minority candidates from the top of the list, including Plaintiff, had been hired, the two minority candidates that Plaintiff claims were favored over him would still have made the cut. Under the rule in *Scott*, the Court is not required to adopt Plaintiff's contention that Defendants "bumped" Plaintiff in order to make room for minorities at the bottom of the roster.

### 2. Circumstantial Evidence - Prima Facie Case

In the absence of direct evidence of discrimination, a plaintiff may also offer circumstantial evidence to establish a *prima facie* case under the burden shifting analysis described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. A *prima facie* case of employment discrimination requires a plaintiff to show that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was treated differently than similarly situated individuals who are not members of his protected class. *McDonnell Douglas*, 411 U.S. at 800-04; *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir.1996). If the plaintiff meets this burden, the burden shifts to the employer to "articulate some legitimate, non-discriminatory reason" for

the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer meets its burden, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination. *Id.* In reverse discrimination cases under Title VII, but not under Michigan law, the first element of the *prima facie* case is that there are "background circumstances" that show that the defendant employer is the "unusual employer who discriminates against the majority." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).

In their motion, Defendants challenge only the fourth prong of the Plaintiff's *prima facie* case; thus, for purposes of this motion, the Court assumes that Plaintiff has met the requirements of the first three prongs. Nevertheless, Plaintiff cannot make the required showing under the fourth prong. Plaintiff's claim fails because he cannot show that he was treated less favorably than any similarly situated non-white candidates. Plaintiff was considered for hiring as part of the 2006/2007 roster of eligible candidates. Plaintiff was not similarly situated with the two minority candidates listed on that roster, Randall Hon and Dontae Hairston, because they were not under consideration on that roster. The evidence submitted by the parties, including the 2006/2007 roster and the testimony of HR Specialist Heather McGinnis and Lieutenant Craig Baylis, indicates that the decision to hire Hon and Hairston, had already been made *before* the 2006/2007 roster was created. There is no evidence that any other non-white candidates were hired as part of the 2006/2007 process.

Plaintiff asserts that there is a contradiction between the testimony of McGinnis and

Baylis regarding the creation of the roster, but their testimony indicates otherwise. McGinnis asserts in an affidavit that, "On or about April 27, 2007, I prepared the hiring roster for the 2006-2007 hiring process. Then as the process continued, the next to last column was filled in to show the final results of the process." (McGinnis Aff. ¶ 5.) The next-to-last column on the roster is the column indicating in typed or handwritten text whether a candidate has been hired or denied. Baylis testified that he personally entered the data for each of the typed entries into the departmental database during the 2006 process, prior to merger of the rosters.[5] (Baylis Dep. 44-48.) Both of the minorities that are listed as hired on the 2006/2007 roster, Hon and Hairston, have typed entries indicating the hiring decision. (Pl. Ex. 5.) Baylis did not testify that he prepared all of the information in the roster, including the handwritten information, only that he entered the hiring data for the candidates from the 2006 process, including Hon and Hairston. (*Id.*) In comparison, McGinnis stated in her affidavit only that she "prepared" the roster in April 2007; she did not testify how she prepared it, other than that the hiring decisions were "filled in" as the process continued. She did not assert that she entered the typed entries, or that the typed entries indicating the hiring decisions of Hon and Hairston were *not* present when she prepared the roster in April 2007. Plaintiff offers no evidence to dispute the hiring roster or the foregoing testimony of Baylis or McGinnis. Even

---

[5] Earlier in his deposition, Baylis testified that the typed entries indicated decisions that were made prior to the handwritten decisions. (Baylis Dep. 40.) Upon further questioning, he recanted this statement stating, "I'm making an assumption based on the facts presented to me." (*Id.*) However, he later testified that he entered the typed entries during the 2006 process. (*Id.* at 46-47.) His later testimony is more specific and is not inconsistent with his earlier testimony.

assuming *arguendo* that there is a dispute as to *who* created the roster document submitted by Plaintiff, there is no genuine dispute that Baylis entered the hiring data regarding Hon and Hairston before the merged roster was created.

Following oral argument, the Court requested additional evidence from the parties regarding the timing of the hiring of Hon and Hairston. Defendants submitted additional evidence indicating that both Hon and Hairston had been hired by March 2007. (Dkt. Nos. 36, 37, Def. Exs. P - V.) Plaintiff objects to this evidence on the basis that it was not provided in accordance with Rule 26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Plaintiff asks the Court to exclude this evidence pursuant to Rule 37(c), which states, in relevant part:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c). However, it is not necessary for the Court to consider Defendants' additional evidence or to decide whether the failure to provide the information is harmless or substantially justified, because there is other evidence that supports Defendants' position.

Plaintiff also argues that there is an issue of fact as to when Hairston was hired, submitting a copy of a "position requisition form" which appears to indicate that Hairston started the position of Police Officer I some time after October 2007, a few months after Plaintiff was denied employment. (Dkt. No. 40, Pl. Ex. C.) However, this evidence does not create a genuine issue of fact because it does not indicate when the decision to hire Hairston

was made, and does not contradict the evidence from the police roster and from the testimony of McGinnis and Baylis, which indicate that the decision to hire Hairston had already been made before Plaintiff was included as part of the 2006/2007 roster of eligible candidates.

Thus, the Court concludes that Plaintiff has failed to establish that there remains a genuine issue of material fact with respect to whether Plaintiff was treated differently from any similarly-situated non-white candidates.[6]

### C. Motion to Amend the Complaint

Because Plaintiff filed his motion to amend after Defendants responded to the complaint, the motion to amend is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 15(a)(2) (requiring that, when a party must seek leave of the court to amend a pleading, the court should "freely give leave when justice so requires"). Plaintiff's proposed amended complaint adds a § 1983 claim of violation of the Equal Protection Clause,[7] and a claim of discrimination under 42 U.S.C. § 1981. Defendants argue that amendment would be futile. Plaintiff admits that the added claims would stand and fall on the same facts. (Dkt. No. 18, Pl. Mot. to Amend Compl. 2.) Given that Plaintiff cannot

---

[6] The facts underlying this case are not complex; Plaintiff claims that he was denied employment so that lower-scoring minority candidates could be hired. There are only two minority candidates that were hired during the 2006/2007 process, yet the Court notes that neither party focused on the timing of the decision to hire these minority candidates until after many months of discovery and two motions for summary judgment. The Court is disappointed with counsel for both parties that the relevant facts, and all the evidence supporting them, were not brought to the Court's attention much earlier in the proceedings of this case.

[7] Plaintiff appears to assume that his original complaint states a claim of Equal Protection, though this is not obvious to the Court. For purposes of this motion, it is not relevant in which complaint it appears.

show discrimination under Title VII, it would be futile for him to try to show discrimination under the Equal Protection Clause or under 42 U.S.C. § 1981. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) ("We review claims of alleged race discrimination brought under § 1981 and the Elliot-Larsen Act under the same standards as claims of race discrimination brought under Title VII."); *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (noting that employment discrimination claims under § 1981 are subject to the same analysis as Title VII); *Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir. 1988) ("As this court has observed several times, the showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983."); *Watson v. City of Cleveland*, 202 F. App'x 844, 856 (6th Cir. 2006) ("Proving intentional discrimination for an equal protection claim brought under § 1983 requires the plaintiff to make the same showing required to prove a violation of Title VII.").

There is some Sixth Circuit precedent indicating that "futility" analysis on a motion to amend examines whether the amended claims could withstand a motion to dismiss, rather than a motion for summary judgment. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). In *Rose*, the Sixth Circuit ruled that it was an abuse of discretion for the district court to deny a motion to amend the complaint without explanation. *Id.* at 420. The appellee in *Rose* argued that the decision to deny the motion to amend should nevertheless be upheld because it was harmless, given that other available evidence could eventually result

in summary judgment on the amended claims. *Id.* at 420-21. The court in *Rose* rejected this argument, holding that the "futility" inquiry determines whether the amended complaint could survive a motion to dismiss. *Id.* at 420. Unlike the lower court in *Rose*, however, this Court has considered the relevant evidence on Defendants' motion for summary judgment and Plaintiff has had an opportunity to respond; moreover, unlike the proposed amendments in *Rose*, Plaintiff's proposed amended claims involve the same relevant facts and the same legal standards as the facts and claims already before the Court on summary judgment. If Plaintiff is unable to prove a claim of reverse-discrimination under Title VII, then neither can he do so under either § 1983 or § 1981. Nothing in Plaintiff's proposed amended complaint would preclude summary judgment for the same reasons already stated with respect to the claims in Plaintiff's original complaint. In other words, this is not a circumstance where "justice so requires" the Court to grant leave to amend. For the foregoing reasons, Plaintiff's motion to amend will be denied.

An order will be entered that is consistent with this opinion.


Dated: <u>March 20, 2009</u>                          <u>/s/ Robert Holmes Bell</u>
                                              ROBERT HOLMES BELL
                                              UNITED STATES DISTRICT JUDGE